**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JOSEPH GLEN STRAWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-25-503-JD** |
| | ) | |
| **FNU RAINEY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Joseph Glen Strawn, a state prisoner proceeding pro se, filed an amended complaint under 42 U.S.C. § 1983 alleging civil rights violations while he was incarcerated at the Lawton Correctional and Rehabilitation Facility ("LCRF") in Lawton, Oklahoma. Doc. 20 ("Complaint"). United States District Judge Jodi W. Dishman referred this matter to the undersigned Magistgrate Judge in accordance with 28 U.S.C. §§ 636(b)(1)(B)-(C). Doc. 4. Defendants filed a Motion to Dismiss ("Motion"). Doc. 47. Plaintiff responded with several filings that the undersigned liberally construes as Plaintiff's response to the Motion. Docs. 54, 61-62, 64-66. Defendants did not file a reply. For the reasons set forth below, the undersigned recommends that the Court convert Defendants' Motion to a motion for summary judgment and grant summary judgment to all Defendants.

## I. Plaintiff's Claims

Plaintiff is an inmate in the custody of the Oklahoma Department of Corrections ("ODOC"). In his Complaint, he brings two claims alleging constitutional violations

against officials at "Lawton Correctional Facility," Doc. 20 at 4, 9, also known as LCRF.[1] Plaintiff names five LCRF officials in his Complaint:

1) Unit Manager Meloni;
2) Lt. Cooper;
3) Case Manager Hatfield;
4) Unit Manager Houstan; and
5) Prison Rape Elimination Act ("PREA") Coordinator Rainey.

*Id*. at 4, 6-11. Plaintiff sues Defendants in both their official and individual capacities. *Id.* at 4, 9. He seeks monetary damages and a "full investigation" with "everyone involved fired" and "criminal charges pressed." *Id*. at 7-8.

In his first claim, Plaintiff alleges LCRF officials denied him access to medical care when they failed to treat his "terrible migraines and blackout spells" after hospitalization in 2024 where his "brain was severely swollen and [he] was unresponsive." *Id*. at 10. According to Plaintiff, he has "been complaining" about his medical condition since he "came out of the hospital," but prison officials are "trying to cover it up and will not do anything to treat [him] except give [him] tylenol." *Id*. Plaintiff also alleges Defendant Meloni retaliated against him for reporting his medical conditions to the Comanche County

[1] Plaintiff was detained at LCRF at all times relevant to his allegations against Defendants. LCRF was a private prison operated by The GEO Group, Inc. *See Plater v. Poirot*, No. 23-6131, 2024 WL 3634225, at *2 (10th Cir. Aug. 2, 2024) (describing GEO Group as "a private prison corporation that operates LCRF under a contract with ODOC"). Plaintiff signed his Complaint on July 21, 2025. Doc. 20 at 8. On July 25, 2025, LCRF was sold to the State of Oklahoma and later renamed the Red Rock Correctional Center. Doc. 46 at 3. The facility was recently renamed again to the Chief James Smith Correctional Center. *See* ODOC, "Lawton prison officially renamed as Chief James Smith Correctional Center," *at* https://oklahoma.gov/doc/newsroom/2026/lawton-prison-officially-renamed-as-chief-james-smith-correction.html (last visited August 12, 2026).

Sheriff's Office by moving him "to SEG." *Id*. Plaintiff further claims he asked Defendant Cooper and other prison officials to report the retaliation, but "none of them will." *Id*.

In the second claim, Plaintiff alleges he was sexually assaulted (1) in 2024 while in ODOC custody at a hospital in Lindsay, Oklahoma, and (2) later, on June 18, 2024, "at intake" while getting processed into LCRF. *Id*. at 11. Plaintiff contends Defendants Hatfield, Houstan, and Rainey, along with other staff members, retaliated against him by threatening to "write [him] up and drop [his] level" for reporting the two incidents. Plaintiff also alleges Defendant Rainey had Defendant Hatfield "drop [Plaintiff's] level for filing a PREA." *Id*.

After initial review of the Complaint, the Court ordered prison officials at LCRF to file a Special Report (also known as a *Martinez* report) and ordered Defendants to file an answer or dispositive motion. Doc. 28 at 3-4. ODOC filed a Special Report. Doc. 46. Defendants also filed the Motion, Doc. 47, that is now at issue before the Court.

## II. <u>Conversion of Defendants' Motion to a Motion for Summary Judgment</u>

Defendants assert three propositions in their Motion. First, they argue Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). *Id*. at 4-8. Defendants rely on documents outside the Complaint to support their exhaustion argument. They refer to ODOC's grievance procedures, Plaintiff's grievance history, and affidavits from ODOC employees about Plaintiff's failure to exhaust administrative remedies, all included in the Special Report. *Id.*; Doc. 46; Docs. 46-3 to 46-11. Second, Defendants contend Plaintiff fails to state a claim of deliberate indifference

under the Eighth Amendment. Doc. 47 at 9-11. Third, Defendants argue they are entitled to qualified immunity. *Id*. at 12-14.

The undersigned recommends that the Court convert the Motion to one for summary judgment. "A 12(b)(6) motion must be converted to a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court.'" *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Fed. R. Civ. P. 12(d)). Generally, before converting a Rule 12(b)(6) motion to a Rule 56 motion for summary judgment, a court must provide parties with notice of the conversion "to prevent unfair surprise." *Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 859 n.2 (10th Cir. 1996).

Here, there is no unfair surprise. The Court provided such notice in its earlier Order Requiring Service and Special Report. Doc. 28. There it advised "the parties that if a Defendant files a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and relies on affidavits and/or documents not attached to or incorporated by reference in the Amended Complaint, the Court will likely convert the motion into a motion for summary judgment." *Id*. at 4. The Court advised that "should this occur, Plaintiff is notified of his responsibility to respond to the motion and present to the Court all relevant evidence or materials." *Id*. at 5 (citation modified). The Court further advised that

> Plaintiff must respond with counter-affidavits and/or documents to set forth specific facts showing that there is a genuine issue of material fact to be litigated at trial. *See* Fed. R. Civ. P. 56(c); LCvR56.1. If Plaintiff does not do so, the Court may declare that the facts in the Defendant's affidavits and/or documents are established as true and there is no genuine issue of material fact in dispute. In that event, if the applicable law allows, the

> Defendant who filed the motion will be entitled to have the motion granted and judgment entered in their favor.

*Id*. at 5 n.2.

The Motion raises failure to exhaust as an affirmative defense and relies on affidavits and other documents from the Special Report, Doc. 46. Plaintiff had adequate notice that he had to defend against summary judgment, so the Court may convert the Motion to a motion for summary judgment. *See Whitmore v. Hill*, 456 F. App'x 735, 737 (10th Cir. 2012) (upholding a district court's conversion of defendants' motion to dismiss into a motion for summary judgment after finding the pro se prisoner "was on notice that, procedurally, he had to defend against summary judgment"); *Goff v. Crow*, No. CIV-23-1158-J, 2025 WL 1680030, at *2 (W.D. Okla. May 12, 2025) (recommending conversion of a motion to dismiss to a motion for summary judgment with prior notice to parties similar to the notice provided here) (R&R), *adopted*, 2025 WL 1679533 (W.D. Okla. June 13, 2025).

## III. Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (citation modified). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way."

*Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1173 (10th Cir. 2020) (citation modified). "A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Id.* (citation modified). When applying these standards, the Court "views the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Wise v. Caffey*, 72 F.4th 1199, 1205 (10th Cir. 2023) (citation modified).

"Failure to exhaust is an affirmative defense under the PLRA." *Jones v. Bock*, 549 U.S. 199, 216 (2007) (citation modified); *see also Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) (holding "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant"). "When a defendant moves for summary judgment based on an affirmative defense, Rule 56 puts the burden on the defendant to demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Estrada v. Smart*, 107 F.4th 1254, 1261 (10th Cir. 2024) (citation modified); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (explaining that a party moving for summary judgment bears "the initial responsibility" of showing "the absence of a genuine issue of material fact").

"If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact" by "offering evidence, not bare allegations." *Estrada*, 107 F.4th at 1261-62 (citation modified). The plaintiff must "set forth specific facts that would be admissible in evidence" and "identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citation modified); *see also* Fed. R.

Civ. P. 56(c)(1)(A) (setting forth how a party introduces summary judgment evidence through, for example, depositions, documents, affidavits or declarations, stipulations, or other materials). If a plaintiff cannot "make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." *Estrada*, 107 F.4th at 1261 (citation modified).

In a case like this, where Plaintiff is a pro se prisoner, a Court-authorized Special Report prepared by ODOC may aid the Court in determining any bases for relief. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). The Court may treat the Special Report as an affidavit in support of a motion for summary judgment, but it may not accept the factual findings of the prison report if Plaintiff presents conflicting evidence. *Id*. at 1111. Plaintiff's "complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury." *Id*. Here, Plaintiff declared under penalty of perjury the truth of his Complaint, to which he attached grievance-related documents. Doc. 20 at 8; Docs. 20-1, 20-2, 20-3.

## IV. <u>Plaintiff Did Not Exhaust Administrative Remedies</u>

### A. Exhaustion requirements of the PLRA

The PLRA requires "inmates complaining about prison conditions [to] exhaust prison grievance remedies before initiating a lawsuit." *Jones*, 549 U.S. at 204. The PLRA's exhaustion provision states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "Exhaustion under the PLRA is 'mandatory' and 'unexhausted claims cannot be brought in court.'" *Estrada*, 107 F.4th at 1259 (quoting *Jones*, 549 U.S. at 211). "Exhaustion requirements" under the PLRA "give the agency a fair and full opportunity to adjudicate the claims" of a plaintiff before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (citation modified). Under the PLRA, a prisoner must "exhaust administrative remedies even where the relief sought . . . cannot be granted by the administrative process." *Id*. at 85.

To exhaust administrative remedies, a prisoner must "properly follow all of the steps laid out in the prison system's grievance procedure." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citation modified); *accord Woodford*, 548 U.S. at 90-91. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). "Substantial compliance is insufficient." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) (citation modified).

The PLRA, however, only requires the exhaustion of "available" remedies. 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 578 U.S. 632, 642 (2016) (concluding an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). Therefore, "if an administrative remedy is not available, then an inmate cannot be required to exhaust it." *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011). Once a defendant demonstrates a plaintiff did not exhaust his administrative remedies, "the onus falls on the plaintiff to show that remedies were unavailable to him." *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir.

2019) (citation modified). The Supreme Court has outlined "three kinds of circumstances in which an administrative remedy, although officially on the books," is not available:

> (1) when an administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates";
>
> (2) when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use," as "no ordinary prisoner can discern or navigate it"; and
>
> (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Ross*, 578 U.S. at 643-44.

**B. ODOC's four-step grievance process**

For the period relevant to Plaintiff's allegations, LCRF used ODOC's "Inmate/Offender Grievance Process" set out in OP-090124. Doc. 46-9 (Inmate/Offender Grievance Process). These inmate grievance procedures govern prisoner complaints about prison conditions and provide a four-step exhaustion process for a prisoner to complete before filing suit. *Id.*; Doc. 46 at 6-7; *see generally Little*, 607 F.3d at 1249 (describing ODOC's "four-step process for administrative exhaustion of prisoner claims").

First, a prisoner must try to resolve informally his complaint by talking to the appropriate staff member. Doc. 46-9, § V. Second, if not resolved informally, the prisoner must submit a Request to Staff ("RTS") to the appropriate staff member. *Id.*, § V.A. Third, if the complaint is still not resolved, a prisoner may file a formal grievance

- to the reviewing authority, *id.*, § VI.A, which is usually the warden of the prison, *Little*, 607 F.3d at 1249, or

- to the prison's correctional health services administrator ("CHSA"), if the complaint relates to a medical issue, Doc. 46-9, § VI.A.1.g.

Fourth, if a grievance response from the reviewing authority or CHSA does not resolve the issue, the prisoner "may make a final appeal" to the administrative review authority ("ARA"), or to the Medical ARA for complaints concerning medical care. *Id.*, § VIII.B. The ruling from the relevant "ARA is final and will conclude the internal administrative process available to the inmate/offender within the jurisdiction of ODOC." *Id.*, § VIII.D.1.

For issues "of a sensitive nature or when substantial risk of personal injury, sexual assault, or other irreparable harm exists," an alternative process may be used where "grievances may be submitted directly to the reviewing authority without informal resolution process." *Id.*, § IX.A.1 (citation modified). If a response to the grievance fails to resolve the issue, the inmate must appeal to the ARA, or if the complaint concerns a medical issue, to the Medical ARA. *Id.*, § VIII.B. Again, the ruling from the relevant "ARA is final and will conclude the internal administrative process available to the inmate/offender within the jurisdiction of ODOC." *Id.*, § VIII.D.1.

### C. Evidence related to Plaintiff's ODOC grievance history

Defendants argue Plaintiff did not exhaust his administrative remedies. Doc. 47 at 4-8; *see also* Doc. 46 at 4-7; Docs. 46-10, 46-11. Defendants' Motion, ODOC's Special Report, and Plaintiff's grievance-related materials attached to his Complaint together provide the following information regarding his grievance history related to his allegations.

**1. ARA – July 10, 2024 (ARA 24-205)**

On July 10, 2024, the ARA received a letter from Plaintiff with complaints about his housing assignment and medical care at facilities other than LCRF, as well as the grievance process at LCRF. Doc. 46-3 at 2-3 (ARA 24-205). The ARA returned the letter as unanswered and advised Plaintiff that he must properly address the issues "through the inmate grievance process. Writing letters is not a step in that process." *Id*. at 4 (ARA 24-405). Plaintiff has provided no evidence that he continued the grievance process for this grievance or appeal.

**2. RTS – October 2, 2024, and October 4, 2024 (RTS 141, RTS 359, Grievance 750-24, Appeal LCF 24-750)**

On October 2, 2024, LCRF received an RTS from Plaintiff asking LCRF staff to save camera footage from an alleged sexual assault on June 18, 2024, and from an alleged delivery of a "fake letter" to Plaintiff on July 3, 2024. Doc. 46-4 at 2-3 (RTS 141). On October 8, 2024, a staff member advised Plaintiff that Defendant Rainey "was advised." *Id*. at 2. On October 7, 2024, LCRF received from Plaintiff another RTS complaining that he had lost earned credit because he asked for the camera footage. Doc. 46-4 at 4 (RTS 359). The next day, a prison official responded and advised Plaintiff that he was "demoted due to filing multiple false PREAs." *Id*.

On October 14, 2024, LCRF received from Plaintiff a grievance about the level demotion. Doc. 46-4 at 5 (Grievance 750-24). The Grievance Coordinator returned the grievance unanswered to Plaintiff because it included too many attachments and did not have a date. *Id*. at 7. The Grievance Coordinator gave Plaintiff ten calendar days to

resubmit a corrected grievance. *Id*. Plaintiff acknowledged receipt of the notice on November 1, 2024. *Id*. On November 12, 2024, the ARA received a grievance appeal from Plaintiff raising issues including alleged sexual assaults and level demotion at LCRF, as well as medical care at the Allen Gamble Correctional Center ("AGCC"), where he had previously been detained. *Id*. at 8-9 (Appeal LCF 24-750). On November 21, 2024, the ARA returned the appeal as unanswered because

> (1) "more than one issue or additional issues submitted in the grievance appeal and not presented in the initial grievance to the reviewing authority for response will not be addressed by ARA"; and
>
> (2) Plaintiff "failed to follow previous instructions from the reviewing authority or ARA for filing this grievance/appeal and/or properly resubmit. DO NOT RESUBMIT."

*Id*. at 10 (citation modified).

Plaintiff has provided no evidence that he continued the grievance process for RTS 141, RTS 359, Grievance 750-24, or Appeal LCF 24-750.

### 3. RTS – October 10, 2024 (RTS 614)

Plaintiff attaches to his Complaint an RTS that LCRF officials received on October 10, 2024. Doc. 20-3 (RTS 614). Plaintiff again complains about not getting access to certain camera footage and disputes his one-level demotion for allegedly asking for the footage. *Id*. On October 14, 2024, an LCRF official responded: "You filed a PREA that was not a PREA issue therefore your level was rightly demoted." *Id*. Plaintiff has provided no evidence that he continued the grievance process for this grievance.

**4. RTS – October 23, 2024 (RTS 1275, Grievance AG-G24-231)**

On October 23, 2024, LCRF received from Plaintiff an RTS requesting camera footage from February 2024 at AGCC, where he was then detained. Doc. 46-5 at 2 (RTS 1275). After an ODOC staff member responded they were unaware and do not control the footage, *id*., Plaintiff submitted grievances to the AGCC Grievance Coordinator on November 13, 2024, and November 19, 2024. *Id*. at 3-5, 6-8 (Grievance AG-G24-231). The AGCC Warden responded that Plaintiff's grievance was being returned as unanswered because it was not timely. *Id*. at 9-10 (explaining an RTS must be submitted within seven days of an incident). On December 18, 2024, Plaintiff refused to sign the Warden's response. *Id*. at 9. Plaintiff has provided no evidence that he continued the grievance process for this grievance.

**5. Grievance Appeal to ARA – December 11, 2024 (Appeal LCF 24-822)**

On December 11, 2024, the ARA received a grievance appeal from Plaintiff, alleging his legal mail had been improperly opened outside his presence on October 24, 2024. Doc. 46-6 at 2 (Appeal LCF 24-822). He claimed more generally "there is all kinds of illegal stuff being done to [him] by DOC." *Id*. Plaintiff asserts in his appeal that he received a response from LCRF on November 19, 2024, but no evidence of the underlying RTS or grievance is in the record. *Id*. The ARA later returned the appeal to Plaintiff as improperly filed because it was untimely and failed to identify his grounds for appeal. *Id*. at 3. Plaintiff has provided no evidence that he continued the grievance process for this grievance or appeal.

**6. Appeal to Medical ARA – March 3, 2025 (MARA Appeal AGCC-25-24)**

On March 3, 2025, the Medical ARA received a letter from Plaintiff alleging inadequate medical care at AGCC and ongoing threats of retaliation. Doc. 46-7 at 3 (MARA Appeal AGCC-25-24). The Medical ARA responded to Plaintiff and advised his grievance correspondence was returned as unanswered because he failed to bring a complaint using a formal grievance. *Id*. at 2. Plaintiff was advised, though, that his letter was being forwarded to the Office of the Inspector General ("OIG") for review. *Id*.

**7. RTS – March 4, 2025 (RTS 81)**

Plaintiff attaches to his Complaint an RTS that LCRF officials received on March 4, 2025. Doc. 20-2 (RTS 81). Plaintiff complains about Defendant Rainey's response to an alleged sexual assault at LCRF as well as one while he was hospitalized before being received at LCRF. *Id*. On March 5, 2025, Defendant Rainey responded: "Sir, this has been addressed many times with you. This is not a PREA issue." *Id*. Plaintiff has provided no evidence that he continued the grievance process for this grievance.

**8. RTS – April 28, 2025; May 1, 2025; and May 15, 2025 (RTS 1292, RTS 58, RTS 755, Grievance 405-25, Grievance 456-25, Grievance 435-25, MARA Appeal 405-25)**

LCRF officials received three RTS from Plaintiff where he requested that certain information be shared with OIG. Doc. 46-8 at 14-15 (RTS 1292) (received on April 28, 2025); Doc. 46-8 at 8-10 (RTS 58) (received on May 1, 2025); Doc. 46-8 at 12 (RTS 755) (received on May 15, 2025). Not satisfied with the RTS responses, Plaintiff filed three grievances. As to RTS 1292, LCRF received a grievance on May 1, 2025. Doc. 46-8 at

13 (Grievance 435-25). As to RTS 58, LCRF received a grievance on May 8, 2025. Doc. 46-8 at 7 (Grievance 405-25). As to RTS 755, LCRF received a grievance on May 21, 2025. Doc. 46-8 at 11 (Grievance 456-25).

On June 10, 2025, the LCRF Grievance Coordinator advised Plaintiff the grievances were being returned unanswered because it was "not a grievable issue (Misconduct, litigation pending, not within/under the authority/control of the Department of Corrections, no remedy allowed the department, etc.)" Doc. 46-8 at 6 (Grievances 405-25, 456-25, 435-25). The Grievance Coordinator also advised Plaintiff he will be placed on a grievance restriction if he fails to follow ODOC regulations. *Id.*

The Medical ARA received a grievance appeal from Plaintiff on June 17, 2025. Doc. 46-8 at 3-5 (MARA Appeal 405-25). Plaintiff alleged prison officials had returned as unanswered a grievance requesting permission to send an RTS to OIG about a medical emergency. *Id.* On July 17, 2025, the Medical ARA advised Plaintiff that the grievance correspondence was returned unanswered for several reasons, including (1) the lack of proper documentation, (2) additional/different issues raised on appeal but not asserted in grievance, (3) the nature of the grievance and RTS involving a complaint against staff and not a medical issue. *Id.* at 2.

Plaintiff has provided no evidence that he completed the grievance process for any medical issue he raised through an RTS or grievance related to medical care at LCRF.

**9. RTS – June 18, 2025 (RTS 781)**

Plaintiff attaches to his Complaint an RTS that LCRF officials received on June 18, 2025. Doc. 20-1 at 1 (RTS 781). Plaintiff again wants certain information relayed to OIG

about his medical care and alleged threats of retaliation. *Id.* at 2. On June 27, 2025, a prison official advised Plaintiff that he "need[s] to send medical issues to medical or/and use the grievance process." *Id.* Plaintiff has provided no evidence that he continued the grievance process for this RTS.

**10. Affidavits from ODOC officials**

The Special Report includes an affidavit from Amandia Callen, ODOC's Grievance Review Specialist of the ARA. Doc. 46-10 at 2-3. Ms. Callen summarizes ARA records for Plaintiff and attests "Inmate Strawn has not exhausted his administrative remedies with ARA." *Id.* at 3. The Special Report also includes an affidavit from Cheri McCleave-Redpath, an Administrative Nurse Manager in ODOC's Medical Services administrative office. Doc. 46-11 at 2. Ms. McCleave-Redpath attests she has reviewed Plaintiff's medical grievance log and he "has not exhausted his administrative remedy in accordance with the department's grievance policy, with respect to any medical issues." *Id.* Plaintiff has provided no evidence that he properly exhausted his administrative remedies through ODOC's grievance procedures.

**D. Summary judgment based on Plaintiff's failure to exhaust ODOC's grievance process**

To exhaust fully the administrative remedies under ODOC's grievance process, a prisoner must properly proceed through all steps of the process, including making a final appeal to the appropriate ARA. Defendants here met their "initial burden," *Estrada v. Smart*, 107 F.4th 1254, 1261 (10th Cir. 2024) (citation modified), of the affirmative defense of failure to exhaust by providing evidence that Plaintiff failed to exhaust ODOC's

grievance process for his claims. Having reviewed ODOC's Special Report and Plaintiff's grievance-related materials attached to his Complaint, the undersigned finds Defendants have presented evidence that Plaintiff did not properly complete the grievance process related to any allegations about medical care at LCRF, responses by LCRF officials to alleged sexual assaults on Plaintiff, his alleged demotion at LCRF, or alleged retaliation by LCRF officials for Plaintiff's reporting of sexual assaults or inadequate medical care. No evidence in the record indicates Plaintiff filed a proper appeal to the ARA or Medical ARA and received a final answer on any claim alleged in the Complaint. Instead, the undisputed record evidence shows neither the ARA nor Medical ARA received any properly filed appeals or full exhaustion of any claims raised by Plaintiff. Doc. 46-10 at 2-3; Doc. 46-11 at 2.

The burden then shifts to Plaintiff to show "the existence of a disputed material fact" about his grievance attempts. *Estrada*, 107 F.4th at 1261 (citation modified). Plaintiff has not presented any evidence that he properly completed the grievance process related to any allegations he presents to the Court.

If Plaintiff contends prison officials hindered his ability to file a grievance, "the onus falls on [him] to show that remedies were unavailable to him." *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). As the non-moving party, Plaintiff must "produce specific facts that show there is a genuine issue of fact," Fed. R. Civ. P. 56(a), about the unavailability of ODOC's administrative remedies. In particular, Plaintiff must come forward with specific facts to show a material factual dispute about whether (1) ODOC's administrative remedy "operates as a simple dead end," (2) the scheme is "so opaque that

it becomes, practically speaking, incapable of use," or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machinations, misrepresentations, or intimidation." *Ross*, 578 U.S. at 643-44.

In response, Plaintiff attempts to invoke the third circumstance in *Ross* by alleging ODOC prison officials "were very strongly impeding," Doc. 54 at 2, his attempts to exhaust administrative remedies. In particular, Plaintiff contends prison officials (1) were "not giving [him] the grievance forms until [he] was out of time to file them," (2) were "returning [his] grievances unanswered," (3) were "not filing all the grievances and RTS [he] gave them," and (4) improperly "put [him] on grievance restriction for filing grievances about trivial de minim[i]s issues when [he] was filing grievances about a medical emergency." *Id*. at 2-3; *see also* Doc. 66 at 2 (alleging prison officials were "not filing the forms [he] gave them until [he] was out of time to file" and "not filing all the forms [he] gave them to file").

Plaintiff, though, "provides no evidence to support this allegation beyond the allegation itself." *May v. Segovia*, 929 F.3d 1223, 1235 (10th Cir. 2019); *see Estrada*, 107 F.4th at 1261-62 (explaining how a plaintiff shows the existence of a material fact by "offering evidence, not bare allegations") (citation modified). Though Plaintiff alleges he gave officers certain grievances or forms that were not filed timely or not filed at all, Doc. 66 at 2, he provides no evidence in support, such as his own sworn declaration or an affidavit attesting to that allegation or copies of the grievance-related documents at issue. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (explaining when a party moves for summary judgment, "the adverse party must respond with affidavits or other evidence

to show a genuine issue of material fact" (citation modified); *May*, 929 F.3d at 1235 (affirming summary judgment for defendants "because nothing in the record indicates that the administrative process was unavailable" (citation modified)).

Therefore, the undisputed facts establish Plaintiff did not exhaust ODOC's grievance process before filing his Complaint. *See* Fed. R. Civ. P. 56(e)(2) (setting forth how a court may "consider the fact undisputed for purposes of" a motion for summary judgment if a party "fails to properly address another party's assertion of a fact"); LCvR56.1(e) (explaining how "all material facts set forth in the statement of material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the nonmovant" (citation modified)). Plaintiff failed to exhaust his administrative remedies, and "unexhausted claims cannot be brought in court," *Jones v. Bock*, 549 U.S. 199, 211 (2007). *See also Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."). Accordingly, Defendants' affirmative defense bars Plaintiff's claims, and Defendants are entitled to summary judgment as a matter of law.[2]

[2] Defendants bring additional arguments in their Motion—that Plaintiff fails to state a claim of deliberate indifference, and Defendants are entitled to qualified immunity. Doc. 47 at 9-14. However, because the undersigned recommends that the Court grant summary judgment to Defendants based on Plaintiff's failure to exhaust ODOC's administrative remedies, the undersigned does not find it necessary to address the Motion's alternative arguments. *See Estrada*, 107 F.4th at 1262 (noting "exhaustion is a precondition for bringing suit under the plain language of" the PLRA (citation modified)).

## V. Plaintiff's Motion Requesting Preliminary Injunction, Doc. 27

Plaintiff also filed a Motion Requesting Preliminary Injunction, asking the Court to order ODOC officials to treat him for certain medical conditions and send him to a hospital or "at least a medical yard." Doc. 27 at 1. Adoption of the undersigned's Report and Recommendation would moot Plaintiff's motion for preliminary injunction.

## VI. Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court convert Defendants' Motion to Dismiss to a motion for summary judgment, Doc. 47, and **GRANT** summary judgment to all Defendants. Adoption of this recommendation would **MOOT** Plaintiff's motion for preliminary injunction, Doc. 27. The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of this Court **not later than September 3, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 13th day of August, 2026.

Chris M. Stephens
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE